Third case of the day. Appeal number 21-1730, Benjamin Adams v. Robert Carter. Hello, Mr. Millman. Good morning, your honor. May it please the court. My name is Jack Millman, and I represent the plaintiff appellate in this case, Benjamin Adams. This is a very complicated case with a lot of facts, but what is not complicated is that the district court erred in granting summary judgment to the defendants because it did not view the evidence in the light most favorable to Mr. Adams. In particular, it did not credit Mr. Adams' deposition testimony. Mr. Millman, can I ask you a question about that, about the evidence on the First Amendment retaliation claim? What is the evidence? I think it was Feldkamp who did the investigation. That it was Feldkamp who did the investigation? Yeah, he was the, he was the, he was the, I forget, I just forget all the names. Feldkamp was the officer who did the investigation. Yes, your honor. Your client filed an ombudsman complaint against Feldman, and Feldman conducted the investigation. What evidence is there specifically that, you know, beyond speculation, beyond speculation here, what evidence is there from which a jury could find a causal link between the activity and the retaliation, meaning between, between the ombudsman report and the retaliation, the investigation? I think a reasonable jury viewing evidence in the light most favorable. What evidence specifically? Would be the fact that the report was false and that Feldkamp knew it was false, that there are specific portions of that testimony for the, of the report, that if Mr. Adams' testimony is credited, particularly about the PayPal transactions, the video surveillance, the prior incidents with the injured inmate, that Mr. Adams said, look, the video evidence will show that I did not take commissary from him. If all of that is credited by a jury, the report into the February 5th incident would have portions which blame Mr. Adams, which must be false, combined with Mr. Adams' testimony and other evidence that he was not involved at all in the February 5th assault. Yeah, but, but, but that's a problem for you because the injured inmate implicated Adams in the attack, right? So the injured inmate says it was Adams was involved, Adams was the one that ordered the attack. That was, and there's no evidence that that inmate lied to Feldman, or Feldkamp, I keep saying Feldman, Feldkamp. So Feldkamp's report stated that's what the injured inmate said, but that would conflict directly with other, for example, inmate Gerritsen, who said that Adams had no involvement, Adams himself. But that doesn't, that, but that doesn't contradict what the injured which Adams' testimony said, look, if you look at those transactions, they would not implicate me at all. So that does directly contradict what's in the report. But did Mr. Barnett or Mr. Feld, or I'm sorry, Mr. Gerritsen, ever say that they told Feldkamp Mr. Adams was not involved in the assault? I mean, Gerritsen's affidavit doesn't say that. So Gerritsen sent an email to the ombudsman saying Adams wasn't involved in the assault. And he also had a sworn affidavit that says Adams wasn't involved in the assault, which Adams presented as evidence to try to say he wasn't involved. No, I know all of that. But what I'm saying is, did they ever say that they told Feldkamp? So I believe that Feldkamp, as part of his investigation, did talk to offender Gerritsen, whether Feldkamp specifically saw the sworn affidavit. I mean, at some point it came in, likely at the first hearing with DHO Peltier in March. But I think a jury could reasonably infer that Feldkamp was aware of this, at least by the second hearing, if not the first. But as part of his investigation, presumably saw the, I mean, Gerritsen sent that email to the ombudsman saying that Adams wasn't involved in mid-February. So that was while the investigation was ongoing. But if it's not until the second hearing, how can the action be retaliation? So you can't establish it by the initial hearing and the initial proceedings. How would it be retaliation? So the evidence for retaliation as for the first hearing, in particular, is that the report contained knowingly false information, such as the video surveillance, the PayPal transactions, and the history of Adams allegedly taking commissary from the injured inmate. All things that could have been, you know, Adams could have been cleared had they looked at the primary evidence. And what raises the issue of fact, back to Judge Kirsch's question, that Feldkamp knew that report was false? I know you're saying, here's this other evidence that raises an issue of fact, whether or not the report about the assault itself was false. So assume there's an issue of fact there. What raises the issue of fact as to whether Feldkamp knew that was actually false when he filed it? The contents of the video surveillance, the PayPal transactions, and the other alleged evidence that Adams took the commissary or was directly involved in the commissary, these are three things where Adams credibly testifies, look, these primary sources clear me. And there's no explanation for why the report would contain this false information if Adams' testimony is credited, which it plausibly should be credited. Is there any evidence that any of the defendants other than Feldkamp knew of the omnibus complaint being filed? There's no direct evidence that I'm aware of in the record, Your Honor. I think a reasonable jury could take a look at all the circumstances of how this unfolded and see that if, you know, Feldkamp wanted to get Adams, he did not like Adams. I think the record is pretty clear on that. But it has to be retaliation for First Amendment activity. So even if they knew Feldkamp didn't like Adams, you have to link it to the First Amendment activity, which is the filing of the complaint here. Yes, Your Honor. I think you could look at it as they facilitated Feldkamp's retaliation. They sort of conspired together to hold this sham hearing and then kind of— I don't think a conspiracy was charged. A conspiracy— It was a First Amendment retaliation. A conspiracy count was not pled, but he did, in his operative complaint, talk about how they conspired together to deprive him of his First Amendment rights. What evidence is there that Feldkamp knew of the ombudsman report? So there's no direct evidence. What circumstantial evidence is there? So there's two points, Your Honor. One is I believe that on the direct evidence point, this is forfeited. There's been multiple times where defendants could have said Feldkamp did not— Forfeited by the— Forfeited by the— By the defendants. By the state. But can't we affirm on any basis what's the problem with that? So the problem— If there's no evidence, there's no evidence. We can't send it back to trial and tell the district judge, good luck with this trial. There's no evidence whatsoever, but you have to try it anyway. So one thing is that this is a very easy question to answer. You just ask Feldkamp, did you know? And I think it's telling that they— Did you ask him? I mean, you didn't represent him below, but did anybody ask him? So it was litigated pro se below, and from what I can tell, it appears everyone sort of assumed he knew. And so in the defendant's motion for summary judgment, they don't discuss this at all. This factual issue is not developed. And Seventh Circuit case law is pretty clear that if a factual issue is not developed at all in summary judgment, it's forfeited. The defendants can't rely on it now on appeal when it was never raised below. And I think in particular this case, the court may not reach the forfeited issue because it's so easy to answer the question. One simply has to ask a single interrogatory, a single question at trial, did you know? And the fact that they've avoided answering that question for three or four years that this proceeding has occurred is to me telling that Feldkamp knew of the ombudsman report. Well, it sounds like they didn't avoid it. They were just never asked. They put in for their summary judgment motion a declaration by Feldkamp that walks through various points, and it never says, I was not aware of the ombudsman report. They didn't dispute it below, did they? They did not dispute it below. Go ahead. You can continue. So there's three other issues besides First Amendment retaliation here. Given the time, if your honors would like to talk about another one of the issues, the Eighth Amendment due process or the equal protection. Is it your position that Feldkamp or any of the other defendants can be liable for the conditions that Mr. Adams experienced in segregation simply because they helped send him there even if they had no control over the conditions themselves? Yes, your honor. So there is another case below a district court decided, Vermillion. I know it's a district court, but it was applying Seventh Circuit precedent, particularly Knight, that if they control the conditions or facilitate, turn a blind eye to the conditions. And in that Vermillion case, similar to here, it involved defendants who basically filed a false report, got the inmate sent to horrific conditions, and then could have done something to get the inmate out of it by telling the truth, but instead continued to play games to keep the inmate in the terrible conditions. And here, the evidence is pretty clear that they knew of the bad conditions. He filed an amended complaint. And the defendants don't dispute that the conditions were terrible. So the only question is whether any of the defendants had sufficient facilitation or control to be liable. And again, summary judgment. So viewing the evidence in the light most favorable to Mr. Adams, I think that it's certainly true for Commissioner Carter because he had overall control and Feldkamp. How did Feldkamp have control over the conditions of confinement? So he facilitated the Eighth Amendment violation both by creating a false report. But the law is pretty clear on the Eighth Amendment under 1983 that you have to have control over the conditions in order to be liable under the Eighth Amendment. And I don't see any Feldkamp having control over those conditions. So, Your Honor, I think with Knight v. Wiseman, which is a Seventh Circuit case, and they talk about when a defendant would be liable for a constitutional violation, it is not just control. I mean, control is the clearest path. But I think in a case where they facilitate, sort of deliberately and different, they know the conditions, they facilitate the person's suffering, and then they have control in the sense that they could stop it by doing the right thing, but they don't, that is also enough under the case law. And that was similar to the issue in the Vermillion District Court case where the defendant officers did not directly control the violation, but they still facilitated it through the false report. If Your Honor has no further questions, I'll reserve three minutes. Good morning, and may it please the Court. The State asked that this Court affirm the District Court's grant of summary judgment because no reasonable jury could find for Benjamin Adams on his four constitutional claims. Adams failed to designate any evidence to contradict the State's evidence, but the defendants did not violate his constitutional rights. I want to take you right into the due process claim because I have a threshold question about that. You want to separate the decision to sanction Mr. Adams for the assault case from the subsequent decision to reclassify him to department-wide restrictive housing. I understand that the reclassification decision was a separate decision based on the fact that he had racked up eight disciplinary violations in one year, but I gather that the assault violation was one of those eight, and Judge Hanlon thought there was at least a question of fact as to whether the assault finding contributed to the decision to reclassify him. So, would you please address that point? Yes, Your Honor. Actually, the State thinks that this Court can address the due process grounds, the due process issue by looking at merits and considering whether he received due process in the disciplinary proceedings. I understand the classification, the department-wide restrictive housing, and the disciplinary segregation issue is confusing, so we think that the Court can go ahead and look at whether he received sufficient due process in the disciplinary proceedings. So, if I could explain that. The only loss here, the only harm that Adam suffered was his placement in segregation or restrictive housing, and because of that, this Court should look at whether he received the informal due process protections. Do you agree that a neutral reviewer is part of the informal placement protections? Yes, Your Honor, we do. Well, you know, one of his theories, of course, is based on his assertion that he was deprived of a neutral reviewer, and if we put together what Officer Pelletier allegedly said to Adams about Felkham making sure he's going to segregation for a long time, and it was out of Pelletier's instructions, with what, what was it, Gagnon told him about hearing officers being given instructions about what to find and what punishment to impose, wouldn't all of that support an inference that the hearing officers were simply doing Felkham's bidding here? No, it doesn't, Your Honor. First, Officer Gagnon's statement is inadmissible hearsay. That comes from, it's either from or his deposition testimony, and Gagnon is not a party in this case. Also, what Officer Pelletier said about higher-ups directing him to find Adams guilty was in the cell phone case and not in the gang, the conspiracy case, and Your Honor, what was the third? I apologize. Your third question? Well, Pelletier... Right, right, Your Honor. Okay. Yes, so Pelletier did say, according to Adams, that Felkham wanted Adams to go away to segregation for a long time, but I don't think this supports that he was denied an impartial decision maker. The conduct report, in the conduct report, Felkham's cites, says that there are... How about, let me just add on so you can respond to it. He didn't just say, according to Adams, that Felkham was going to make sure he went away for a long time. He also said it was out of his where Adams is talking about Pelletier saying it was out of his hands. But in regard to Felkham allegedly saying that he wanted Adams to go away for a long time, in his conduct report, he said there were aggravating circumstances in this case. So Felkham believed that Adams conspired to injure this offender and that him and Barnett and segregation for it for a long time. So I don't believe that supports that Pelletier wasn't an impartial decision maker. Also, I wanted to briefly point out that in his response to our motion summary judgments, Adams' complaints in regard to due process were primarily that he was denied what this is an evidence and not that he was denied an impartial decision maker. That was one of his arguments, though. I'm sorry, in what? That he was denied an impartial decision maker. That was one of his arguments on appeal, yes. But in his motion for summary judgment and in his many declarations he filed in opposition to the state's motion, he focuses mainly on being denied evidence, being denied witnesses. He did complain about the reviewers, if I recall. I mean, it's pro se, so we have to construe it liberally. He did seem to complain about the reviewers. He complains about them mostly in the terms of the retaliation and equal protection, but he didn't designate any evidence to support those claims. I think given that it's pro se, that might be a stretch to say that. If we review it liberally, yes, we have to. I think there's sufficient information that he complained about his reviewers below. And even if the court does, I don't think there's any evidence that he was denied an evidence. What about Feldkamp's email to Andrews when Andrews forwarded the emails from the disciplinary review officer? Your Honor, the email was sent actually after the disciplinary hearing, so that doesn't show that Andrews wasn't impartial in the disciplinary proceedings. But also, a lot of times we ask— Can I ask you one question real quick? That email that you're referring to was after Andrews ruled in the disciplinary proceeding, right? Yes, I think it was in November in the disciplinary proceedings. Yeah, it was in October 2017, so the email came afterward. Yes, Your Honor. And also, a lot of times we ask investigators about why evidence was denied, whether it was supposed to be kept confidential. So he could have just been referring to that, but I don't think that email alone supports that Andrews wasn't impartial. And then if there are no more questions about the due process, I'd like to move on to— No, no. I want to talk to you about the way the government here has read Westerfer v. Neal. For the broad proposition that any decision of placing an inmate in segregation requires only the most informal procedure, and never requires that an inmate be given the benefit of live witness testimony, for example. Because it seems to me that our more recent decision— well, our more recent decision, I guess, in Williams, although it's not precedential, suggests that when we're talking about disciplinary segregation, more may sometimes be required. Here, we are given some reason to believe that Barnett and Garretson would have exculpated Adams. Why wasn't the hearing officer required to hear their testimony before deciding who to believe? Your Honor, the reason that we believe that only informal process is required is because if you look at the Supreme Court's precedent, specifically in Wolfe, they recognized that different liberty interests require different types of process or protections. And the court in Wolfe recognized that the loss of earned credit time didn't require as many protections as parole revocations. And so if you look at Wilkinson and Hewitt, they talk about those that the liberty interest involved in placement in restrictive housing doesn't require as many protections as when an offender is losing earned credit time or being demoted in credit class. And so it makes sense that informal due process would apply in this case, even though the avenue or the mechanism that got him there was a disciplinary hearing. I'd like to move on to the retaliation claim. Adams didn't designate any evidence that would contradict Feldkamp's testimony that he genuinely believed what he put in his report was true, that he believed the injured offender, that Adams conspired with Garrett and Barnett to assault him, and to take his commissary. Adams relies on the Gale case from the Second Circuit to say that Adams' own testimony and his many declarations that he didn't commit the assault is enough to create a material issue of fact. But it's not, because it's not whether Adams actually committed the assault. It's whether Feldkamp believed Adams committed the assault or whether he believed the injured offender. And there's no evidence here that Feldkamp did not genuinely believe that Adams committed the assault. Does anyone have any questions on retaliation before I move on? I'd briefly like to touch upon opposing counsel's argument about the Eighth Amendment claim. There's no evidence that any of the named defendants had any control over Adams' conditions of confinement. And this is especially true given that Adams was in restrictive housing at Wabash Valley for a lot of the time, and none of these defendants actually worked at Wabash Valley. Also, in Adams' own deposition, he admits that they had no control over the conditions of confinement. And as to Commissioner Carter, the state argued in its brief that Commissioner Carter, that the Eighth Amendment claim wasn't actually against Commissioner Carter. But I think even if you look at the, even if you think that it was, the complaint was only on Carter's failure to train his officers. And a failure to train is an official capacity claim. And opposing counsel admitted in his reply brief that the injunctive relief here is moot. And so Adams cannot obtain any relief from Commissioner Carter. And then finally, there is no evidence that any of the defendants violated Adams' equal protection rights. Adams failed to show that he was similarly situated to either the injured offender or offender Gerritsen. He was not similarly situated to the injured offender because Feldkamp and the other officers believed he was the victim in this case. And so he wasn't charged. He was also not treated differently from offender Gerritsen. Feldkamp charged Adams, Gerritsen, and Barnett with the A-100 offense. And he recommended, um, I'm sorry, Your Honor. He, Adams didn't show that Feldkamp charged him, actually charged him with the lesser offense. And Adams didn't produce any evidence to show that any of the other defendants treated Gerritsen differently. What about the punishment? I thought one was one year and Adams got two. Yes, Your Honor. Barnett and Gerritsen both received one year. Adams got two. But the second year was for another offense. So they all only received the one year for the, um, for this offense. And, and that's supported by the conduct report. And also there is an email, I believe, um, that lists all three offenders and, uh, the sanctions that they got, they received. Um, and there's also no evidence that, um, Feldkamp was motivated by the filing of the, oh, I'm sorry. Um, the, um, there's no other evidence that a reasonable jury could conclude that, I lost my, um, there's no evidence that Feldkamp intentionally discriminated against Adams based on his race. Adams relies mainly on one statement, but that was a statement that Feldkamp used in the course of his, um, investigation to get information regarding an officer, and whether she was improperly treating, um, mistreating other offenders. And, um, there's no evidence that Peltier, Andrews, or Penfold were motivated by race. So because, um, Adams didn't produce any evidence that contradicts the state evidence that shows that the defendants did not violate Adams' constitutional rights, the state asked that this court affirm. Thank you. Thank you very much. Mr. Millman, come on up. Would you change that to the full three minutes that Mr. Millman had requested, please? Thank you, Your Honor. Just a couple of quick points. First, the deposition transcript was designated as evidence in its entirety. Mr. Millman, here's the problem that I have with the causal link. We have this ombudsman complaint that was filed, and then we have your client's testimony that Feldkamp's report was false. You nitpick little things in the report, the PayPal and the video surveillance and things like that. His report was false. But what evidence did Adams designate that could be used as a causal link to establish that Feldman didn't believe that his report was correct? I think the state hits the issue and describes the issue correctly, because the report can be inaccurate. That's okay. Adams can't nitpick the report and say, well, here's this little falsity, and from that we can infer retaliation, and I'm entitled to a trial. That would turn our retaliation law on its head. What evidence was designated that Feldkamp knew that the report was false? So, I would go back to the primary sources that Adams says would directly contradict what was in the report, which would be both the video— I got that, but that has nothing to do with Feldkamp believing that the report was false. Well, Feldkamp would have looked at those sources, or a reasonable jury could infer that Feldkamp would have looked at those sources. Is there any evidence of that, though? That Feldkamp would have looked at those primary sources? That he did look at the primary sources. Well— Is there any evidence that Feldkamp watched the video and then falsely reported the video, from which a jury could conclude that Feldkamp knew that his description of the video was false? It's just speculation. You see the issue I have with that? I understand the issue, Your Honor. I would go back to, for example, the PayPal transactions. They either did or they didn't exist. Feldkamp says they existed and implicate Adams. Adams says they didn't. That's a battle of credibility. One of them has to be incorrect. One of them has to be knowingly wrong. But that's not enough to establish a trial, at least under our current case law. Every time there'd be a trial and retaliation case, every single case, every defendant would be entitled to a trial. This is a little bit of a unique case because there's the timing, which on its own is not enough. It's combined with the parts of the report that I think whether it's enough for trial is different from whether it's enough to dispute a fact about whether he knew at least aspects of the report were false. The timing probably hurts you here. It's not only that it's not enough. It probably hurts you because of the timing. Feldkamp conducts his investigation and files his report long after the ombudsman report was filed. He conducts a careful investigation. This is not a timing thing where we see a reactive punishment in retaliation. The timing here probably helps the state. I would say there's a dispute of fact about whether the investigation was careful or whether they were just out to get Adams, particularly because he was implicated quite early on. I think it was just a couple days after the February 5th assault is when Feldkamp said the injured offender implicated Adams. This is two, three weeks after the February or after the ombudsman complaint was filed. And you also have the oddity of these charges kept not sticking and then they kept coming back. I mean, he was in solitary doing these internal appeals. This came up in the Gale case, too, about the fact the charges were not sustained as additional evidence a jury could look at and say something went wrong here. I mean, you're talking he's in solitary. Well, I'm not even sure that would be admissible at trial, by the way. The fact that the charges were not sustained. Right. I'm not sure that's admissible evidence. I don't think it has anything to do with retaliation. That could be all kinds of reasons for that, including that he was getting out of prison. It could be all kinds of reasons. That would be a total side issue. We just don't know. Did anyone else have any other questions? Is there anything else you needed to add? Just briefly that, you know, the state has conceded. There's a question of whether he received due process that the disciplinary hearings were directly tied to the disciplinary segregation. They sort of conceded a neutral review as needed. And I think that on this record, there's at least a question of fact. Thank you so much, then. And the case will be taken under advisement. Thank you.